**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **TRIA WS LLC, TRIA TR, LLC, and ALASKA CAFÉ LLC, individually and on behalf of all others similarly situated,** : : : : | |
| : | **CLASS ACTION** |
| **Plaintiffs,** : | |
| : | **JURY TRIAL DEMANDED** |
| **v.** : | |
| : | |
| **ALLIANZ GLOBAL RISKS US INSURANCE COMPANY, AGCS MARINE INSURANCE COMPANY, ALLIANZ UNDERWRITERS INSURANCE COMPANY, FIREMAN'S FUND INSURANCE COMPANY, AMERICAN AUTOMOBILE INSURANCE COMPANY, ASSOCIATED INDEMNITY CORP., CHICAGO INSURANCE COMPANY, INTERSTATE FIRE & CASUALTY COMPANY, NATIONAL SURETY CORP., and THE AMERICAN INSURANCE COMPANY,** : : : : : : : : : : : | |
| : | |
| **Defendants.** : | |

## CLASS ACTION COMPLAINT

Plaintiffs Tria WS LLC ("Tria WS Cafe"), Alaska Café LLC ("Tria Alaska Cafe") and Tria

TR, LLC ("Tria Taproom") (collectively "Plaintiffs"), both individually and on behalf of all others

similarly situated, file this class action Complaint against Defendants Allianz Global Risks US

Insurance Company, AGCS Marine Insurance Company, Allianz Underwriters Insurance

Company, Fireman's Fund Insurance Company, American Automobile Insurance Company,

Associated Indemnity Corp., Chicago Insurance Company, Interstate Fire & Casualty Company,

National Surety Corp., and The American Insurance Company (collectively "Defendants" or

"Insurers"), and in support state the following on information and belief based on reasonable

investigation and discovery, except where specifically identified as being based on personal knowledge:

## INTRODUCTION

1.  On personal knowledge, Plaintiffs Tria WS Café, Tria Alaska Café and Tria Taproom are Pennsylvania limited liability companies that operate restaurants and wine and beer bars in Philadelphia, Pennsylvania.

2.  On or about April 27, 2019, Tria Alaska Café purchased a commercial policy of insurance issued by Defendant American Automobile Insurance Company ("AAIC") bearing policy number SAM 2003033-19.

3.  On or about July 2, 2019, Tria WS Café purchased a commercial policy of insurance issued by AAIC bearing policy number SAM 2003660-19.

3.  On or about November 1, 2019, Tria Taproom purchased a commercial policy of insurance issued by AAIC bearing policy number SAM 2003331-19.

4.  The Policies are each bilateral contracts: Plaintiffs agreed to pay monthly premiums to AAIC in exchange for AAIC's promises of coverage for all risks of loss except those specifically and unambiguously excluded.

5.  Plaintiffs reasonably expected that claims for loss of business income and extra expenses arising from the inability to use their physical locations would be paid unless specifically and unambiguously excluded.

6.  Specifically, the Business Income (And Extra Expense) Coverage Form (CP 00 30 10 12) endorsement protected Plaintiffs against the actual loss of business income due to a suspension of Plaintiffs' respective operations. Along with this business income coverage, Plaintiffs also had in effect a "Plus D – Additional Coverages And Coverage Extensions"

endorsement under which AAIC promised to pay necessary expenses incurred by Plaintiffs in addition to the actual loss of business income sustained during a period of restoration that Plaintiffs would not have otherwise incurred if there had been no direct physical loss of the property.

7.     The Business Income (And Extra Expense) Coverage Form (CP 00 30 10 12) endorsements to the Policies also provided additional "Civil Authority" coverage, under which the insurer promised to pay for loss of business income Plaintiffs sustained and necessary "Extra Expense" Plaintiffs incurred caused by actions of civil authorities "that prohibits access to the described premises."

8.     Plaintiffs complied with their obligations under their respective Policies by timely paying all premiums required.

9.     Effective March 17, 2020, at 12:01 a.m., pursuant to the Order of the Governor of Pennsylvania, Plaintiffs were forced to close their restaurants and wine and beer bars located in Philadelphia, Pennsylvania.[1] The Order was based on the presence of "Coronavirus Disease 2019 (COVID-19)" in Pennsylvania and acknowledged that COVID-19's presence jeopardized health in public places within Pennsylvania.

10.     As a result of the Orders of the various civil authorities, Plaintiffs suffered, and/or continue to suffer, significant and injurious losses and expenses directly related to the physical inability to use the premises covered by their respective Policies.

11.     The Policies obligated AAIC to provide coverage for, and to pay, business income losses and extra expense losses resulting from the suspension of Plaintiffs' respective operations, including suspensions resulting from the actions of civil authorities.  Plaintiffs each reported notice of their losses to AAIC on March 17, 2020.

---

[1] *See* Order of the Governor Suspending Certain Public Gatherings Due to Risk of Infection by COVID-19, dated March 16, 2020, attached as **Exhibit A.**

12.     In response, on July 9, 2020, AAIC reneged on its promises and wrongfully failed to fulfill its contractual obligation to provide coverage for, and pay, Plaintiffs' business income losses and extra expense losses resulting from the suspension of their operations, including suspensions resulting from the actions of civil authorities. AAIC's actions in improperly denying Plaintiffs' claims were a blatant disregard for Plaintiffs' contractual rights and resulted in a material breach of AAIC's duties and obligation owed under the Policies thus depriving Plaintiffs of the benefit of their bargain and causing serious financial damages to Plaintiffs.

13.     On information and belief, there are hundreds, if not thousands, of restaurants, bars and other eateries insured by AAIC and its affiliated Insurers as set out more fully below. On further information and belief, AAIC and the other Insurers specifically target restaurants, bars and other eateries such as Plaintiffs, and many other such businesses have the same or similar policies issued by the Insurers providing the same or similar business income, extra expense coverage and extended business income coverage.  Plaintiffs believe, and therefore allege, that the Insurers have also wrongfully, capriciously and arbitrarily denied coverage and payments to these other small businesses.

**THE PARTIES**

14.     On personal knowledge, Tria WS Café, Tria Alaska Café and Tria Taproom are all each limited liability companies organized under the laws of and existing in the Commonwealth of Pennsylvania.  All Plaintiffs have a registered business address of 4129 Fields Drive, Lafayette Hill, Pennsylvania 19444.

15.     Defendant Allianz Global Risks US Insurance Company is a corporation organized under the laws of Illinois with its principal place of business located at 2350 Empire Avenue, Burbank, California 91504.  Allianz Global Risks US Insurance Company is nationally authorized

to write, sell, and issue insurance policies providing property and business income coverage through its domestic subsidiaries, Defendants AGCS Marine Insurance Company, Allianz Underwriters Insurance Company, Fireman's Fund Insurance Company, American Automobile Insurance Company, Associated Indemnity Corp., Chicago Insurance Company, Interstate Fire & Casualty Company, National Surety Corp., and The American Insurance Company.

16. AAIC, one of the Allianz Global Risks US Insurance Company's underwriting subsidiaries, is a corporation organized and existing by virtue of the laws of Missouri with a principal place of business located at 225 West Washington Street, Suite 1800 Chicago, Illinois 60606.

17. Fireman's Fund Insurance Company, one of the Allianz Global Risks US Insurance Company's underwriting subsidiaries, is a corporation organized and existing by virtue of the laws of California, with its principal place of business located at 777 San Marin Drive, Novato, California, 94988.

18. AGCS Marine Insurance Company, one of Allianz Global Risks US Insurance Company's underwriting subsidiaries, is a corporation organized and existing by virtue of the laws of Illinois, with its principal place of business at 225 West Washington Street, Chicago, Illinois 60606.

19. Allianz Underwriters Insurance Company, one of Allianz Global Risks US Insurance Company's underwriting subsidiaries, is a corporation organized and existing by virtue of the laws of California, with its principal place of business at 2350 West Empire Ave, Suite 200, Burbank, California 91504.

20.     Associated Indemnity Corp., one of Allianz Global Risks US Insurance Company's underwriting subsidiaries, is a corporation organized and existing by virtue of the laws of Illinois, with its principal place of business located at 777 San Marin Drive, Novato, California, 94988.

21.     Chicago Insurance Company, Allianz Global Risks US Insurance Company's underwriting subsidiaries, is a corporation organized and existing by virtue of the laws of Illinois, with its principal place of business located at 777 San Marin Drive, Novato, California, 94988.

22.     Interstate Fire & Casualty Company, one of Allianz Global Risks US Insurance Company's underwriting subsidiaries, is a corporation organized and existing by virtue of the laws of Illinois, with its principal place of business located at 777 San Marin Drive, Novato, California, 94988.

23.     National Surety Corporation, one of Allianz Global Risks US Insurance Company's underwriting subsidiaries, is a corporation organized and existing by virtue of the laws of Illinois, with its principal place of business located at 777 San Marin Drive, Novato, California, 94998.

24.     The American Insurance Company, one of Allianz Global Risks US Insurance Company's underwriting subsidiaries, is a corporation organized and existing by virtue of the laws of Ohio, with its principal place of business at 777 San Marin Drive, Novato, California, 94988.

25.     At all material times hereto, Insurers conducted and transacted business through the selling and issuing of insurance policies, including but not limited to selling and issuing commercial property coverage to Plaintiffs and all other Class Members as defined *infra*.

26.     In so doing, the Insurers were acting in the course and scope of such agency, representation, joint venture, conspiracy, consultancy, predecessor agreement, successor agreement, service and employment, with knowledge, acquiescence, and ratification of each other and their principal Allianz Global Risks US Insurance Company.

27.     On Information and belief, all Defendants, as Allianz Global Risks US Insurance Company underwriting subsidiaries, offer identical coverage using identical forms, including Business Income (And Extra Expense) Form (CP 00 30 10 12), promulgated, required and ratified by their principal, Allianz Global Risks US Insurance Company.

28.     Upon information and belief, all of Allianz Global Risks US Insurance Company's underwriting subsidiaries, including AAIC and the other Defendants, offer the exact same insurance, using the same forms, copyrighted by Allianz Global Corporate and Specialty.

29.     Upon information and belief, every Allianz Global Risks US Insurance Company underwriting subsidiary, including AAIC and the other Defendants, is in possession of insurance forms, stationery, and materials of defendant Allianz Global Risks US Insurance Company, all of which are endorsed with its logo.[2]

30.     Through the facts and circumstances set forth above, plaintiffs were led to believe that AAIC had full and complete authority to enter into any and all contracts and transactions on behalf of defendant Allianz and was further led to believe that AAIC was acting within the scope of its authority because the actions were within the apparent scope of authority and were implied as being within the ordinary and customary authority of the Allianz Global Risks US Insurance Companies, or employees of Allianz under the same or similar circumstances.

## JURISDICTION AND VENUE

31.     This Court has subject matter jurisdiction over the claims asserted in this action under 28 U.S.C. § 1332 because there is complete diversity between Defendants and at least one member of each class; there are more than one hundred members of each class; and the amount in controversy exceeds $5,000,000 exclusive of interest and costs. This Court also has subject matter

---

[2] *See, e.g.*, Declarations to Policies, **Exhibits B**, **C**, and **D**.

jurisdiction under 28 U.S.C. §§ 2201 and 2202 and is authorized to grant declaratory relief under these statutes.

32.     On information and belief, Defendants have all systematically transacted and conducted business in the Commonwealth of Pennsylvania, and contracted to supply insurance services within the Commonwealth of Pennsylvania, and these causes of action arise, in part, from the same.

33.     On information and belief, at all relevant times, Defendants expected or should have expected that their acts would have consequences within the United States of America and the Commonwealth of Pennsylvania.

34.     On information and belief, at all relevant times, Defendants derived and continue to derive substantial revenue from providing insurance used in the Commonwealth of Pennsylvania.

35.     On information and belief, at all relevant times, Defendants committed tortious acts within the Commonwealth of Pennsylvania causing injury within the Commonwealth of Pennsylvania, out of which act(s) these causes of action arise.

36.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiffs' claims occurred, in part, in the Eastern District of Pennsylvania, Defendants transact a substantial amount of business in this District, Defendants otherwise has sufficient contacts with this District to justify it being fairly brought into this District, and Plaintiffs reside in this District and were first injured in this District.

## FACTUAL BACKGROUND

*The Policies*

37.     Tria WF Café's policy has an effective period of July 2, 2019, to July 2, 2020, and insures business operations at the property located at 1137 Spruce Street, Philadelphia, Pennsylvania 19107.

38.     Tria Alaska Café's policy has an effective period of April 27, 2019, to April 27, 2020, and insures business operations at the property located at 123 South 18th Street, Philadelphia, Pennsylvania 19103.

39.     Tria Taproom's policy has an effective period of November 1, 2019, to November 1, 2020, and insures business operations at the property located at 2005 Walnut Street, Philadelphia, Pennsylvania 19102.

40.     The Policies each contain the Building and Personal Property Coverage Form (CP 00 10 10 12), which states:

> **We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.**

41.     The Policies each contain both a "Specified Cause of Loss" category and "Covered Cause of Loss" category, the latter of which is an all-risk coverage form meaning that all risks are covered unless specifically excluded or limited by other provisions in the Policies. All risks coverage is defined by limitations and exclusions in the Policies, and in the Policies, Defendants agreed: "when special is shown in the declarations, covered causes of loss means direct physical loss unless the loss is excluded or limited in this policy."

42.    Because "Special" is listed on the Policies' Declarations, the Insurers promised to pay for losses of business income sustained as a result of Covered Causes of Loss not otherwise excluded or limited under the Policies.

43.    The Policies also contained the "Plus D – Additional Coverages And Coverage Extensions" Form (TRCP1005 01-16), which modified the Policies' Building and Personal Property Coverage Forms and Causes of Loss-Special Forms to include Additional Coverages for Business Income and Extra Expense.

44.    Under these coverages, AAIC is obligated to indemnify Plaintiffs whenever they sustained a loss or damage caused by or resulting from a Covered Cause of Loss, and AAIC specifically promised Plaintiffs:

> **We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit Of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss…**

45.    The phrases "damage", "direct physical loss" and "damage to property" are not defined by the Policies.  However, "suspension" is defined as "a.  The slowdown or cessation of your business activities; or; b. That a part or all of the described premises is rendered untenantable, if coverage for Business Income … applies."

46.    The Policies also provide Extended Business Income coverage, as follows:

> **Extended Business Income**
>
> **If the necessary "suspension" of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that:**

>    **(a)    Begins on the date property (except "finished stock") is actually repaired, rebuilt or replaced and "operations" are resumed; and**
>
>    **(b)    Ends on the earlier of:**
>
>        **(i)    The date you could restore your "operations", with reasonable speed, to the level which would generate the business income amount that would have existed if no direct physical loss or damage had occurred; or**
>
>        **(ii)    60 consecutive days after the date determined in (1)(a) above.**
>
>    **However, Extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located. Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.**

47.    In addition to promising to pay for loss of Business Income, under the Policies, AAIC also promised to pay for certain necessary "Extra Expense." Extra Expense means expenses that the policyholder incurs to, for example, minimize the suspension of business operations.

48.    The Policies also provide additional "Civil Authority" coverage as follows:

>    **(a) Civil Authority**
>
>    **In this Additional Coverage, Civil Authority, the described premises are premises to which this Coverage Form applies, as shown in the Declarations.   When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:**
>
>        **(1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and**

**(2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.**

**Civil Authority Coverage for Business Income will begin 72 hours after the time of the first action of civil authority that prohibits access to the described premises and will apply for a period of up to four consecutive weeks from the date on which such coverage began. Civil Authority Coverage began.**

49.     AAIC promised to pay the Plaintiffs for actions of civil authorities if a Covered Cause of Loss caused damage to property other than property at the plaintiffs' respective premises, as described in the respective policies Declarations page, and that Plaintiffs suffered actual loss due to civil authorities prohibiting access to Plaintiffs' premises.

50.     The Business Income and Extra Expense coverage, as well as the Extended Business Income coverages, are separate, independent and not mutually exclusive of coverage for Civil Authority; thus, the Plaintiffs could theoretically recover under any one of these coverages or all of these coverages at the same time.

51.     Unlike the Business Income and Extra Expense coverage, the Civil Authority coverage does not require the Plaintiffs to show a "direct physical loss" and "damage" to their respective properties.   Instead, the Plaintiffs are required to show that there was "damaged property" in the area immediate to the Plaintiffs' respective premises and that "action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage." Neither "damaged property" nor "dangerous physical conditions" is defined by the policies.

*History of COVID-19*

52.     On December 31, 2019, the World Health Organization reported people in China were becoming sick due to a mysterious form of pneumonia.

53.     On January 11, 2020, China reported its first death from the mysterious form of pneumonia.

54.     On January 21, 2020, the first confirmed case of the mysterious form of pneumonia was reported in the United States.

55.     On January 30, 2020, for only the sixth time in its history, the World Health Organization ("WHO"), declared the outbreak of the mysterious form of pneumonia a Public Health Emergency of International Concern.

56.     On February 11, 2020, the WHO announced COVID-19, also known as coronavirus disease, as the name for the new mysterious form of pneumonia.

57.     On February 29, 2020, the first death caused by COVID-19 was reported in the United States.

58.     On March 13, 2020, President Trump declares the outbreak of COVID-19 to be a national emergency.

59.     As of March 17, 2020, COVID-19 was reported to be present in every state in the United States.

60.     As of March 26, 2020, the United States had more confirmed cases of COVID-19 than any other country in the world.

*Actions of Civil Authorities in the City of Philadelphia*

61.     On March 11, 2020, Mayor Jim Kenney issued an order recognizing "that the spread of COVID-19 constitutes an emergency that affects the public health of the people of

Philadelphia"[3] and to "allow for the temporary promulgation of regulations pertaining to the threat of COVID-19."[4]

62.    On March 16, 2020, the Mayor and the Commissioner of Health jointly issued an Emergency Order prohibiting operation of non-essential businesses to prevent the spread of COVID-19.[5]

63.    The March 16, 2020 Order mandated that no person shall operate a non-essential place of business and distinguished "essential retail businesses" from non-essential business. "Food Services" or restaurants were limited to providing delivery service or preordering online or via phone, and bars were determined to be non-essential.[6]

64.    On March 17, 2020, the Mayor  issued a new order prohibiting the operation of non-essential businesses in Philadelphia, stating among other things that, "COVID-19 may remain viable for hours to days on surfaces made from a variety of materials located in businesses and other places, thus contaminating certain property and places."[7]

65.    The actions of the City of Philadelphia forced the Plaintiffs to cease and suspend their respective business operations.

*Actions of Civil Authorities for the Commonwealth of Pennsylvania*

66.    On March 6, 2020, in response to the 2019 novel coronavirus disease, COVID-19, the Governor of Pennsylvania issued a Proclamation of Disaster Emergency.[8]

67.    On March 16, 2020, the Pennsylvania Governor Tom Wolf announced that the Commonwealth of Pennsylvania was imposing mitigation efforts to curtail the spread of COVID-

---

[3] *See* **Exhibit E**
[4] *Id.*
[5] *See* **Exhibit F**
[6] *Id.*
[7] See **Exhibit G.**
[8] *See* **Exhibit H.**

19 uniformly across the Commonwealth, calling upon nonessential businesses (including restaurants, bars and other eateries) to close beginning on Tuesday March 17, 2020.[9]

68.     On March 19, 2020, Governor Wolf announced that the Commonwealth of Pennsylvania had ordered all non-life-sustaining businesses in Pennsylvania to close their physical locations as of the end of the day to slow the spread of COVID-19, and that enforcement actions against businesses that do not close their physical locations would begin on March 21, 2020.[10]

69.     The March 19, 2020 Order, closed, among other businesses, bars, restaurants and other eateries that were unable to provide carry-out, delivery, and/or drive through service.[11]

70.     On April 15, 202 the Secretary of Pennsylvania's Department of Health, issued an order recognizing that business that were allowed to reopen must take special care to protect their properties from contamination, stating "cleaning, disinfecting, and other maintenance and security services… are critical to protecting the public health by reducing COVID-19 infection in the Commonwealth…"[12]

71.     On July 16, 2020, the Governor Wolf issued a limited reopening order for bars, restaurants and other eateries, provided they limit their occupancy to 25% and, in no event, more than 25 persons.[13]

72.     Governor Wolf has also instituted the Plan for Pennsylvania, delineating three phases for relief, reopening and recovery. This plan also includes "The Process To Reopen Pennsylvania.

---

[9] *See* **Exhibit A.**
[10] *See* **Exhibit I.**
[11] *Id.*
[12] *See* **Exhibit J.**
[13] *See* **Exhibit K**, Gov. Order. Directing Targeted Mitigation Measures.

73.     Pursuant to the Process to Reopen Pennsylvania Plan, on June 5, 2020, Philadelphia County reopened restaurants, bars and other eateries under severe limitations on the accessibility and/or use of the properties. The Plan required, among other things:

- Indoor areas, including bar areas, of restaurants and retail food service businesses must be closed to customers except for through-traffic. Non-bar seating in outdoor areas (i.e., tables or counter seats that do not line up to a bar or food service area) may be used for customer seating.

- Prohibition from conducting operations unless the facility offers sit-down, dine-in meals or is serving take-out sales of alcoholic beverages. Customers being served must be seated at a table; bar service is prohibited.

- Provide at least six feet between parties at tables, (i.e., the six feet cannot include the space taken up by the seated guest) or physical barriers between customers where booths are arranged back to back. If tables or other seating are not movable, seat parties at least six feet apart.

- Spacing must also allow for physical distancing from areas outside of the facility's control (i.e. such that pedestrians on a sidewalk can pass with at least six feet of distance to customer).

- Ensure maximum occupancy limits for indoor and outdoor areas are posted and strictly enforced. Maximum occupancy, to include all customers and employees at the facility, is calculated using the following two methods. The more restrictive number must be used.
  - Method 1. Limit indoor occupancy to 25% of stated fire code maximum occupancy. When no fire code number is available for outdoor dining, occupancy of up to 25 people per 1,000 square feet number is allowed.
  - Method 2. Arrange the restaurant or retail food service business so that customers sitting at a table are not within six feet of any customers sitting at another table in any direction and calculate the maximum number of customers that can be accommodated.

- In addition to these maximum occupancy limits, additional limits apply to discrete gatherings and events which may be held within the restaurant, facility, or venue, such as weddings, and catered events. Specifically, restaurants, facilities and venues must limit the total number of individuals gathering at one time (including staff) for any discrete gathering or event within the facility or venue as follows:
  - In the Yellow and Green Phases of reopening, discrete gatherings are limited to 25 individuals.
  - Don't use shared tables among multiple parties unless the seats can be arranged to maintain six feet of distance between parties.

16

- o Train all employees on the importance and expectation of increased frequency of handwashing, the use of hand sanitizer with at least 60% alcohol, and provide clear instructions to avoid touching hands to face.
- o Assign employee(s) to monitor and clean high touch areas frequently while in operation including entrance doors, bathroom surfaces, host stands etc., and continue to regularly clean all other areas of the restaurant or retail food service businesses. Clean and disinfect any shared items with which customers will come in contact such as tabletops, digital menus, check presenters, and digital payment devices after each customer use.
- o Implement procedures to increase cleaning and sanitizing frequency in the back of house. Avoid all food contact surfaces when using disinfectants.
- o Provide physical guides, such as tape on floors or sidewalks and signage on walls to ensure that customers remain at least six feet apart in lines or waiting for seating or in line for the restroom. Encourage customers ordering take-out to wait in their vehicles after ordering.
- o If live musicians are performing at a restaurant, facility or venue, they must remain at least six feet from patrons and staff.
- o Provide non-medical masks for employees to wear at all times and make it mandatory to wear masks while at the restaurant or retail food service business. An employee does not need to wear a mask if it impedes their vision, if they have a medical condition, or if it would create an unsafe condition in which to operate equipment or execute a task. Employers may approve masks obtained or made by employees according to Department of Health policies.
- o Where possible, stagger workstations to avoid employees standing adjacent or next to each other. Where six feet of separation is not possible, consider spacing options that include other mitigation efforts with increased frequency of cleaning and sanitizing surfaces.
- o Establish a limit for the number of employees in shared spaces, including break rooms, and offices to maintain at least a six-foot distance.
- o Ensure employees do not share equipment to the extent possible (e.g., cooking equipment, trays, etc.).
- o Verify that dishwashing machines are operating at the required wash, rinse and sanitize temperatures and with appropriate detergents and sanitizers.
- o Follow all requirements of the Department of Agriculture's Food Code regulations, even when altering from normal types of food delivery.

- All businesses and employees in the restaurant and retail food service industry authorized to conduct in person activities pursuant to this guidance are encouraged to do the following:
  - o Establish a written, worksite-specific COVID-19 prevention plan at every location, perform a comprehensive risk assessment of all work areas, and designate a person to implement the plan.
  - o Prior to each shift, ask that the employees self-measure their temperature and assess symptoms.

- o Utilize reservations for dining on premises to maintain records of all appointments, including contact information for all customers.
- o Use staff-facilitated seating where appropriate. If seating is not staff facilitated and tables cannot be moved to meet the physical distancing requirements outlined above, tables that should not be used must be clearly marked as out of service.
- o Allow no more than 10 people at a table, unless they are a family from the same household.
- o Use single-use disposable menus (e.g., paper) and discard after each customer, or utilize a written posting such as a chalkboard or whiteboard to relay menu information.
- o Close or remove amenities and congregate areas non-essential to the preparation and service of food or beverages such as dance floors, game areas, playgrounds, small games of chance and tavern gaming etc.
- o Use technology solutions where possible to reduce person-to-person interaction, including mobile ordering; text or phone app technology to alert customers when their table is ready to avoid use of "buzzers;" and contactless payment options.
- o Install physical barriers, such as sneeze guards and partitions at point of sale terminals, cash registers, bars, host stands, and other areas where maintaining physical distance of six feet is difficult.
- o Consider methods to make point of sale terminals safer, including use of no contact applications, placement of a glass or clear plastic barrier between the employee and the customer, and providing a hand sanitizer station for customer and employee use after handling credit/debit cards, PIN terminals, or exchange of cash.
- o Consider installing touchless door and sink systems or providing single-use barriers (e.g., deli tissues, paper towels) for use when touching door and sink handles.
- o Schedule closure periods throughout the day to allow for cleaning and disinfecting, including bathrooms (i.e., after lunch service).
- o Servers should avoid touching items on tables while customers are seated to the extent possible. Dedicated staff should remove all items from the table when customers leave.
- o Use separate doors to enter and exit the establishment when possible.
- o When protective equipment such as face coverings are used, launder daily and wash hands after touching/adjusting face covering while working.

- All businesses and employees in the restaurant and retail food service industry authorized to conduct in person activities in Yellow phase counties pursuant to this guidance are prohibited from doing the following:
  - o Using self-service food or drink options, such as buffets, salad bars, and condiments.
  - o Condiments must be removed from tables and dispensed by employees upon the request of a customer.
  - o Using reusable menus, other than digital menus sanitized after each use.

- o Operating amenities and congregate areas non-essential to the preparation and service of food or beverages such as child play areas, interactive games, and video arcades. Electronic jukeboxes are permissible.
- o Refilling food and beverage containers or implements brought in by customers, unless the container or implement can be refilled without contact with the tap or dispenser, containers are sanitized before use, or the tap or dispenser is sanitized before and after each use.

74.    The actions of the Commonwealth of Pennsylvania forced the Plaintiffs to cease, suspend and/or severely limit their business operations.

*Impact of COVID-19 in Pennsylvania*

75.    According to the Pennsylvania Department of Public Health, Philadelphia County, where Plaintiffs maintain their respective locations, had 30,771 COVID-19 cases and 1,681 total deaths as of the week of August 1, 2020.

76.    Government shutdown orders like those issued by the Governor of Pennsylvania and Mayor of Philadelphia have resulted in the loss of nearly 2 million jobs in the Commonwealth, and it is projected that there will be significant, longstanding economic consequences at the state and local levels.

77.    In the City of Philadelphia alone, it is expected that the pandemic and associated shut down orders may ultimately result in:

- 389 business failures and an increase in unemployment of approximately 11,350 persons;

- an increase in the poverty rate to 28.3%;

- a $19.6 billion drop in total wage income, which corresponds to a loss of $761.7 million in wage tax revenue; and

- a $1.25 billion loss of gross domestic product ("GDP").

*Plaintiffs' Covered Losses*

78.     Based on the state and local orders described above, each of Plaintiffs' respective locations were prevented from physically using their insured premises to conduct business as of March 16, 2020.

79.     Indeed, even after Plaintiffs were permitted to partially resume physical use of their insured premises under the state and local orders described above, they continued to suffer losses and incur extra operating expenses.

80.     Plaintiffs have suffered a suspension of normal business operations and a cessation of all operations on their premises, sustained losses of business income, and incurred extra expenses.

81.     These losses and expenses have continued through the date of filing of this action.

82.     These losses and expenses are not excluded from coverage under the respective Policies, and because the respective Policies are all-risk policies, and Plaintiffs have complied with their contractual obligations, Plaintiffs are entitled to payment for these losses and expenses.

83.     Plaintiffs have suffered a suspension and/or cessation of all normal business operations given the response to the global pandemic associated with the spread of COVID-19, including the actions of civil authority described herein.

84.     Accordingly, on March 17, 2020, Plaintiffs provided notice of its losses and expenses to AAIC, consistent with the terms and procedures of their respective Policies.[14]

---

[14] *See* **Exhibit L.**

85.    Contrary to the plain language of the Policies, and to AAIC's corresponding promises and contractual obligations, on July 9, 2020, AAIC refused to pay for Plaintiffs' respective losses and expenses under the terms of the Policies.[15]

## CLASS ACTION ALLEGATIONS

86.    The class claims all derive directly from a single course of conduct by Allianz Global Risks US Insurance Company and its domestic underwriting subsidiaries, including AAIC, and their systematic, uniform, capricious and arbitrary refusal to pay insureds for covered losses and the actions taken by civil authorities to suspend business operations.

87.    Plaintiffs bring this action pursuant to Rules 23(a), 23(b)(1), 23(b)(2), and/or 23(b)(3), as well as 23(c)(4), of the Federal Rules of Civil Procedure, individually and on behalf of all others similarly situated. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

88.    Plaintiffs seek to represent a nationwide class as the Court may deem appropriate defined as:

    a)    All bars, restaurants and other eateries that purchased Business Income and Extra Expense coverage under a policy of insurance issued by the Insurers covering the period of March 2020 through the present that suffered a suspension of business operations due to government prohibitions on the use of their insured premises and for which the Insurers have either actually denied or stated they will deny a claim for the losses or have otherwise failed to acknowledge, accept as a

---

[15] *See Id..*

covered cause of loss, or pay for the covered losses ("the Business Income Coverage Class").

b)    All bars, restaurants and other eateries that purchased Extended Business Income coverage under a policy of insurance issued by the Insurers covering the period of March 2020 through the present that incurred extra expenses to avoid or minimize the suspension of business operations due to government prohibitions on the use of their insured premises and for which the Insurers have either actually denied or stated they will deny a claim for the extra expenses or have otherwise failed to acknowledge, accept as a covered expense, or pay for the covered expenses ("the Extra Expense Coverage Class").

c)    All bars, restaurants and other eaters that purchased Civil Authority coverage under a policy of insurance issued by the Insurers covering the period of March 2020 through the present that suffered an actual loss of Business Income and/or Extra Expense due to government prohibitions on the use of their insured premises and for which the Insurers have either actually denied or stated they will deny a claim for the losses or have otherwise failed to acknowledge, accept as a covered cause of loss, or pay for the covered losses ("the Civil Authority Coverage Class").

89.     Excluded from each defined proposed Classes are Defendants and any of their members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; governmental entities; Class Counsel and their employees; and the judicial officers and Court staff assigned to this case and their immediate family members.

90.     Plaintiffs reserve the right to modify, expand, or amend the definitions of the proposed Classes, as appropriate, during the course of this litigation.

91.     This action has been brought and may properly be maintained on behalf of each Class proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

*Numerosity and Ascertainability*

92.     This action satisfies the requirements of Fed. R. Civ. P. 23(a)(1). The members of each proposed Class are so numerous that individual joinder of all Class members is impracticable. There are, at a minimum, hundreds, if not thousands, of members of each proposed Class, and these individuals and entities are spread out across the Commonwealth and the United States.

93.     The identity of Class members is ascertainable, as the names and addresses of all Class members can be identified in Defendants' or its agents' books and records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

*Predominance of Common Issues*

94.     This action satisfies the requirements of Fed. R. Civ. P. 23(a)(2) and 23(b)(3) because this action involves common questions of law and fact that predominate over any questions affecting only individual Class members. As affiliated and/or subsidiary domestic underwriting entities, all Defendants issued the same or substantially similar all-risk policies using the same or similar coverage forms promulgated, required and/or endorsed by Allianz Global Risks

US Insurance Company to all the members of each proposed Class in exchange for payment of premiums by the Class members. The questions of law and fact affecting all Class members include, without limitation, the following:

a)      Whether Plaintiffs and the Class members suffered a covered cause of loss under the policies issued to members of the Class;

b)      Whether Defendants wrongfully, capriciously and arbitrarily denied all claims based on the facts set forth herein;

c)      Whether Defendants' Business Income coverage applies based on the facts set forth herein;

d)      Whether Defendants' Civil Authority coverage applies to a loss of Business Income based on the facts set forth herein;

e)      Whether Defendants' Extra Expense coverage applies to efforts to avoid or minimize a loss caused by the suspension of business based on the facts set forth herein;

f)      Whether Defendants have breached their contracts of insurance through a uniform and blanket denial of all claims for business losses based on the facts set forth herein;

g)      Whether the Defendants acted in bad faith breach of contract and the duty of good faith and fair dealing through a uniform and blanket denial of all claims for business losses based on the facts set forth herein; and

h)      Whether Plaintiffs and the Class members suffered damages
        as a result of Defendants' actions; and

i)      Whether Plaintiffs and the Class members are entitled to an
        award of reasonable attorneys' fees, interest, and costs.

*Typicality*

95.     This action satisfies the requirements of Fed. R. Civ. P. 23(a)(3) because Plaintiffs' claims are typical of the claims of the Class members and arise from the same course of conduct by Defendants.  Plaintiffs and the other Class members are all similarly affected by Defendants' refusal to pay under their Policies, which are representative of the same or similar all-risk policies issued by the Defendants as domestic underwriting affiliates and/or subsidiaries of Allianz Global Risks US Insurance Company.  Plaintiffs' claims are based upon the same legal theories as those of the other Class members.  Plaintiffs and the other Class members sustained damages as a direct and proximate result of the same wrongful practices in which Defendants engaged. The relief Plaintiffs seek is typical of the relief sought for the absent Class members.

*Adequacy of Representation*

96.     This action satisfies the requirements of Fed. R. Civ. P. 23(a)(4) because Plaintiffs will fairly and adequately represent and protect the interests of Class members. Plaintiffs have retained counsel with substantial experience in prosecuting complex class action and insurance coverage litigation.

97.     Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Class members and have the financial resources to do so. Neither Plaintiffs nor their counsel has interests adverse to those of the Class members.

*Inconsistent or Varying Adjudications and the Risk of Impediments to Other Class Members'*
*Interests*

98.     This action satisfies the requirements of Fed. R. Civ. P. 23(b)(1). Plaintiffs seek
class-wide adjudication as to the interpretation and scope of Defendants' insurance policies, which
use the same or similar coverage forms promulgated, required and/or endorsed by Allianz Global
Risks US Insurance Company.  The prosecution of separate actions by individual members of the
proposed Classes would create an imminent risk of inconsistent or varying adjudications that
would establish incompatible standards of conduct for Defendants.

*Final Injunctive and/or Corresponding Declaratory Relief with respect to the Class is*
*Appropriate*

99.     This action satisfies the requirements of Fed. R. Civ. P. 23(b)(2) because
Defendants acted or refused to act on grounds generally applicable to Plaintiffs and the members
of the Classes, thereby making appropriate final injunctive and/or corresponding declaratory relief
with respect to the Class members. The Class' claims all derive directly from Defendants'
systematic, uniform, capricious and arbitrary refusal to pay insureds for losses suffered due to
government prohibitions on the use of insured premises in response to the pandemic associated
with the spread of COVID-19. Defendants' actions or refusal to act are grounded upon the same
generally applicable legal theories.

*Superiority*

100.     This action satisfies the requirements of Fed. R. Civ. P. 23(b)(3) because a class
action is superior to other available methods for the fair and efficient group-wide adjudication of
this controversy. The common questions of law and of fact regarding Defendants' conduct and the
interpretation of the common language in their insurance policies predominate over any questions
affecting only individual Class members.

101.    Because the damages suffered by certain individual Class members may be relatively small, the expense and burden of individual litigation would make it very difficult for all individual Class members to redress the wrongs done to each of them individually, such that many Class members would have no rational economic interest in individually controlling the prosecution of specific actions, and the burden imposed on the judicial system by individual litigation by even a small fraction of the Class would be enormous, making class adjudication the superior alternative under Fed. R. Civ. P. 23(b)(3)(A).

102.    The conduct of this action as a class action presents far fewer management difficulties, far better conserves judicial resources and the parties' resources, and far more effectively protects the rights of each Class member than would piecemeal litigation. Compared to the expense, burdens, inconsistencies, economic infeasibility, and inefficiencies of individualized litigation, the challenges of managing this action as a class action are substantially outweighed by the benefits to the legitimate interests of the parties, the Court, and the public of class treatment in this Court, making class adjudication superior to other alternatives, under Fed. R. Civ. P. 23(b)(3)(D).

103.    Plaintiffs are not aware of any obstacles likely to be encountered in the management of this action that would preclude its maintenance as a class action. Rule 23 provides the Court with authority and flexibility to maximize the efficiencies and benefits of the class mechanism and reduce management challenges. The Court may, on motion of Plaintiffs or on its own determination, certify nationwide, statewide and/or multistate classes for claims sharing common legal questions; utilize the provisions of Rule 23(c)(4) to certify any particular claims, issues, or common questions of fact or law for class-wide adjudication; certify and adjudicate bellwether class claims; and utilize Rule 23(c)(5) to divide any Class into subclasses.

**CAUSES OF ACTION**
**COUNT I:  DECLARATORY JUDGMENT**
**(On behalf of the Business Income Coverage Class)**

104.    Plaintiffs incorporate by reference and re-allege paragraphs 1 through 103 above, as though fully set forth herein.

105.    Plaintiffs bring this Count both individually and on behalf of the other members of the Business Income Coverage Class.

106.    Under 28 U.S.C. §§ 2201 and 2202, this Court has jurisdiction to declare the rights and other legal relations of the parties in dispute.

107.    Plaintiffs' respective Policies, as well as the policies of other Business Income Coverage Class members, are insurance contracts under which Defendants were paid premiums in exchange for promises to pay Class members' losses for claims covered by the policies.

108.    In the policies, Defendants promised to pay for losses of business income and extra expense sustained as a result of perils not excluded under the policies. Specifically, Defendants promised to pay for losses of business income and extra expense sustained as a result of a suspension of business operations during the period of restoration.

109.    Plaintiffs and Class members suffered direct physical loss of or damage to Plaintiffs' insured premises and other Class members' insured premises, resulting in interruptions or suspensions of business operations at the locations. These suspensions and interruptions have caused Plaintiffs and Class members to suffer losses of business income and extra expense.

110.    These suspensions and interruptions, and the resulting losses, triggered business income and extra expense coverage under the respective Policies and other Class members' policies.

111.    Plaintiffs and the other Class members have complied with all applicable provisions of their respective policies, including payment of premiums.

112.    Defendants, without justification, denied that the Policies and other Class members' policies provide coverage for these losses.

113.    Plaintiffs seek a Declaratory Judgment that their Policies and other Class members' policies provide coverage for the losses of business income and extra expense attributable to the facts set forth above.

114.    An actual case or controversy exists regarding Plaintiffs' and other Class members' rights and Defendants' obligations to reimburse Plaintiffs and other Class members for the full amount of these losses. Accordingly, the Declaratory Judgment sought is justiciable.

**WHEREFORE**, Plaintiffs requests that this Court enter a Declaratory Judgment declaring that the Policies and other Class members' policies provide coverage for Class members' losses of business income.

## COUNT II:  BREACH OF CONTRACT
### (On behalf of the Business Income Coverage Class)

115.    Plaintiffs incorporate by reference and re-allege paragraphs 1 through 103 above, as though fully set forth herein.

116.    Plaintiffs bring this Count both individually and on behalf of the other members of the Business Income Coverage Class.

117.    Plaintiffs' respective Policies, as well as the policies of other Business Income Coverage Class members, are insurance contracts under which Defendants were paid premiums in exchange for promises to pay Class members' losses for claims covered by the respective policies.

118.    In the policies, Defendants promised to pay for losses of business income and extra expense incurred as a result of perils not excluded under the policies. Specifically, Defendants

promised to pay for losses of business income and extra expense sustained as a result of a suspension of business operations during the period of restoration.

119.    Plaintiffs and Class members have suffered a direct physical loss of or damage to Plaintiffs' insured premises and other Class members' insured premises as a result of interruptions or suspensions of business operations at these premises. These interruptions and suspensions have caused Class members to suffer losses of business income and extra expense.

120.    These losses triggered business income and extra expense coverage under both the respective Policies and other Class members' policies.

121.    Plaintiffs and the other Class members have complied with all applicable provisions of their respective policies, including payment of premiums.

122.    Defendants have denied coverage and refused performance under the respective Policies and other Class members' policies by denying coverage for these losses and expenses. Accordingly, Defendants are in breach of the Policies and other Class members' policies.

123.    As a result of Defendants' breaches of the respective Policies and other Class members' policies, Plaintiffs and other Class members have suffered actual and substantial damages for which Defendants are liable.

**WHEREFORE**, Plaintiffs, both individually and on behalf of other Class members, seek compensatory damages resulting from Defendants' breaches of their Policies and other Class Members' policies and seek all other relief deemed appropriate by this Court.

**COUNT III:  BAD FAITH BREACH OF CONTRACT AND
THE DUTY OF GOOD FAITH AND FAIR DEALING**
**(On behalf of the Business Income Coverage Class)**

124.    Plaintiffs incorporate by reference and re-allege paragraphs 1 through 103 above, as though fully set forth herein.

125.    Plaintiffs bring this Count both individually and on behalf of the other members of the Business Income Coverage Class.

126.    Plaintiffs' respective Policies, as well as the policies of other Business Income Coverage Class members, are insurance contracts under which Defendants were paid premiums in exchange for promises to pay Class members' losses for claims covered by the policies.

127.    In the policies, Defendants promised to pay for losses of business income and extra expense incurred as a result of perils not excluded under the policies. Specifically, Defendants promised to pay for losses of business income and extra expense sustained as a result of a suspension of business operations during the period of restoration.

128.    Plaintiffs and Class members suffered an actual loss of business income and extra expense to the necessary suspension of Plaintiffs' bars and/or restaurants and other Class members' business operations at insured premises and said suspension(s) were caused by direct physical loss of and damage to Plaintiffs' bars and/or restaurants and other Class members' insured premises caused by or resulting from Covered Causes of Loss under the respective Policies and other Class members' policies. These actual losses, therefore, triggered Business Income and Extra Expense coverage under both the respective Policies and other Class members' policies.

129.    These Covered Causes of Loss were direct, physical and foreseeable causes of loss under the Policies and other Class members' policies and they each caused, and/or resulted in, dangerous physical conditions at, and physical injuries to, the Plaintiffs' restaurants, bars or eateries, other Class members' insured premises and property immediately adjacent to each. The subject Covered Causes of Loss pose a serious risk to and endanger(ed) the public's health, safety and property and rendered the Plaintiffs' bars, restaurants or eateries and other Class members'

insured premises unusable and/or uninhabitable; thus, mandating a suspension of business operations.

130.    These losses and expenses are not excluded from coverage under the policies.  The policies are all-risk policies meaning Covered Causes of Loss are determined by exclusions and the subject Covered Causes of Loss were not excluded under the policies.

131.    Furthermore, these Covered Causes of Loss caused direct physical loss and damage to the Plaintiffs' various business premises and the other Class Members' insured premises resulting in dangerous physical conditions, the nature of such loss and damage to property having been recognized by civil authorities in Orders addressing COVID-19.

132.    Plaintiffs and the other Class members have complied with all applicable provisions of their respective policies, including payment of premiums.

133.    The actions of the Defendants give rise to a cause of action for bad faith breach of contract and the duty of good faith and fair dealing as Plaintiffs and other Class members were covered under Plaintiffs' respective Policies, as well as the policies of other Business Income Coverage Class members, and the Defendants has breached the terms of said policies by denying business income and extra expense coverage to the Plaintiffs and other Class members. Defendants' actions in breaching the terms of the Plaintiffs' respective policies and the other Class Members' policies, in bad faith, have proximately caused damages to Plaintiffs and other Class members and the damages were reasonably foreseeable to the Defendants.

134.    It appears that the Defendants' conduct was performed because they placed their own financial interests before the Plaintiffs' and other Class Members' financial interests.

135.    Further, the actions of the Defendants in denying business income and extra expense coverage to the Plaintiffs and other Class Members was done so without any legitimate

basis or arguable reason and constitute intentional and/or malicious conduct or gross negligence and reckless disregard.

136.     Implied in the Plaintiffs' respective Policies and the other Class Members' policies is a duty of good faith and fair dealing with respect to conduct encompassed by contractual relations. Defendants' conduct as aforesaid breached the duty of good faith and fair dealing which further gives rise to the tort of bad faith for the breach of contract.

137.     Defendants, at all times relevant hereto, owed Plaintiffs and other Class Members a duty to exercise good faith and an obligation to deal fairly with them; however, the denial of business income and extra expense coverage by Defendants constituted a bad faith breach of contract and was totally made with only the Defendants' best interests in mind and in total disregard of the contractual rights of Plaintiffs and other Class Members.

138.     Defendants' bad faith material breach(es) of the Plaintiffs' respective Policies, as well as other Class members' policies, has resulted in actual and substantial damages to the Plaintiffs and Business Income Coverage Class members, depriving all of the benefit of their bargain, and represents, in addition to warranting contractual damages, incidental damages and consequential damages, an independent tort entitling Plaintiffs and other Class Members to punitive damages in an amount which will punish the Defendants for their intentional, grossly negligent, and/or reckless conduct as well as to deter Defendants and others from similar misconduct in the future.

**WHEREFORE**, Plaintiffs, both individually and on behalf of other Class members, seek compensatory damages, contractual damages, incidental damages, consequential damages, and punitive damages, resulting from Defendants' bad faith breach(es) of the Policies and other Class Members' policies and seek all other relief deemed appropriate by this Court.

## COUNT IV:  DECLARATORY JUDGMENT
### (On behalf of the Extended Business Income Coverage Class)

139.    Plaintiffs incorporate by reference and re-allege paragraphs 1 through 103 above, as though fully set forth herein.

140.    Plaintiffs bring this Count both individually and on behalf of the other members of the Extra Expense Coverage Class.

141.    Under 28 U.S.C. §§ 2201 and 2202, this Court has jurisdiction to declare the rights and other legal relations of the parties in dispute.

142.    Plaintiffs' respective Policies, as well as the policies of other Extended Business Income Coverage Class members, are insurance contracts under which Defendants were paid premiums in exchange for promises to pay Class members' losses for claims covered by the policies.

143.    Specifically, Defendants promised to pay for extended business income for losses incurred by Plaintiffs and other Class members during the period of restoration that the insureds would not have incurred if there had been no loss or damage to the insured premises. Extended business income included income to avoid or minimize the suspension of business, continue operations, and to repair or replace property.

144.    Plaintiffs and Class members suffered direct physical loss of or damage to their locations and other Class members' insured premises, resulting in suspensions or interruptions of business operations at these premises. As a result, Plaintiffs and other Class members have incurred losses, as defined in the respective Policies and other Class members' policies.

145.    These losses triggered Extended Business Income coverage under the policies and other Class members' policies.

146.    Plaintiffs and the other Class members have complied with all applicable provisions of their respective policies, including payment of premiums.

147.    Defendants, without justification, denied that the Policies and other Class members' policies provide coverage for these Extended Business Income.

148.    Plaintiffs, both individually and on behalf of the other members of the Extended Business Income Coverage Class, seek a Declaratory Judgment that their Policies, and those of other members of the Extended Business Income Coverage Class, provides coverage for these extended business income.

149.    An actual case or controversy exists regarding Class members' rights and Defendants' obligations under Class members' policies to reimburse Class members for extended business income. Accordingly, the Declaratory Judgment sought is justiciable.

**WHEREFORE**, Plaintiffs requests that this Court enter a Declaratory Judgment declaring that the Policies and other Class members' policies provide coverage for Class members' extended business income.

## COUNT V:  BREACH OF CONTRACT
### (On behalf of the Extended Business Income Coverage Class)

150.    Plaintiffs incorporates by reference and re-allege paragraphs 1 through 103 above, as though fully set forth herein.

151.    Plaintiffs bring this Count individually and on behalf of the other members of the Extended Business Income Coverage Class.

152.    Plaintiffs' respective Policies, as well as the policies of other Extended Business Income Coverage Class members, are insurance contracts under which Defendants were paid premiums in exchange for promises to pay Class members' losses for claims covered by their policies.

153.    Specifically, Defendants promised to pay for extended business income for losses incurred by Plaintiffs and other Class members during the period of restoration that the insureds would not have incurred if there had been no loss or damage to the insured premises. Extended business income losses included income to avoid or minimize the suspension of business, continue operations, and to repair or replace property.

154.    Plaintiffs and Class members suffered direct physical loss of or damage to their locations and other Class members' insured premises, resulting in suspensions and interruptions of business operations at these premises.  These suspensions and interruptions have caused Class members to incur Extra Expenses.

155.    These expenses triggered extended business income coverage under the policies and other Class members' policies.

156.    Plaintiffs and the other Class members have complied with all applicable provisions of their policies, including payment of premiums.

157.    Defendants have denied coverage and refused performance extended business income. Accordingly, Defendants are in breach of the Policies and other Class members' policies.

158.    As a result of Defendants' breaches of the Policies and other Class members' policies, Plaintiffs and other Class members have suffered actual and substantial damages for which Defendants are liable.

**WHEREFORE**, Plaintiffs, individually and on behalf of other Class members, seek compensatory damages resulting from Defendants' breaches of the Policies and other Class Members' policies and seek all other relief deemed appropriate by this Court.

### COUNT VI:  BAD FAITH BREACH OF CONTRACT AND THE DUTY OF GOOD FAITH AND FAIR DEALING
**(On behalf of the Extended Business Income Coverage Class)**

159.    Plaintiffs incorporates by reference and re-allege paragraphs 1 through 103 above, as though fully set forth herein.

160.    Plaintiffs bring this Count both individually and on behalf of the other members of the Extra Expense Coverage Class.

161.    Plaintiffs' respective Policies, as well as the policies of other Extended Business Income Coverage Class members, are insurance contracts under which Defendants were paid premiums in exchange for promises to pay Class members' losses for claims covered by the policies.

162.    In the policies, Defendants promised to pay extended business income for losses, incurred as a result of perils not excluded under the policies. Specifically, Defendants promised to pay for losses of Extended Business Income sustained as a result of a suspension of business operations during the period of restoration.

163.    Plaintiffs and Class members suffered an actual loss of business income due to the necessary Suspension of Plaintiffs' restaurants, bars or eateries and other Class members' business operations at insured premises and said suspension(s) were caused by direct physical loss of and damage to their restaurants, bars or eateries and other Class members' insured premises caused by or resulting from Covered Causes of Loss under the Policies and other Class members' policies. These actual losses, therefore, triggered Extended Business Income coverage under Plaintiffs' respective Policies and other Class members' policies.

164.    These Covered Causes of Loss were direct, physical and foreseeable causes of loss under the Policies and other Class members' policies and they each caused, and/or resulted in,

dangerous physical conditions at, and physical injuries to, their bars, restaurants or eateries, other Class members' insured premises and property immediately adjacent to each. The subject Covered Causes of Loss pose a serious risk to and endanger(ed) the public's health, safety and property and rendered the Plaintiffs' bars, restaurants or eateries and other Class members' insured premises unusable and/or uninhabitable; thus, mandating a suspension of business operations.

165.    These losses and expenses are not excluded from coverage under the policies. The policies are all-risk policies meaning Covered Causes of Loss are determined by exclusions and the subject Covered Causes of Loss were not excluded under the policies.

166.    Furthermore, these Covered Causes of Loss caused direct physical loss and damage to the Plaintiffs' various business premises and the other Class Members' insured premises resulting in dangerous physical conditions, the nature of such loss and damage to property having been recognized by civil authorities in Orders addressing COVID-19.

167.    Plaintiffs and the other Class members have complied with all applicable provisions of their respective policies, including payment of premiums.

168.    The actions of the Defendants give rise to a cause of action for bad faith breach of contract and the duty of good faith and fair dealing as Plaintiffs and other Class members were covered under their respective policies, as well as the policies of other Class members, and the Defendants have breached the terms of said policies by denying extended business income coverage to the Plaintiffs and other Class members. Defendants' actions in breaching the terms of the Plaintiffs' respective polices and the other Class Members' policies, in bad faith, have proximately caused damages to Plaintiffs and other Class members and the damages were reasonably foreseeable to the Defendants.

169.    It appears that the Defendants' conduct was performed because they placed their own financial interests before the Plaintiffs' and other Class Members' financial interests.

170.    Further, the actions of the Defendants in denying extended business income coverage to the Plaintiffs and other Class Members was done so without any legitimate basis or arguable reason and constitute intentional and/or malicious conduct or gross negligence and reckless disregard.

171.    Implied in the Plaintiffs' respective Policies and the other Class Members' policies is a duty of good faith and fair dealing with respect to conduct encompassed by contractual relations. Defendants' conduct as aforesaid breached the duty of good faith and fair dealing which further gives rise to the tort of bad faith for the breach of contract.

172.    Defendants, at all times relevant hereto, owed Plaintiffs and other Class Members a duty to exercise good faith and an obligation to deal fairly with them; however, the denial of extended business income coverage by Defendants constituted a bad faith breach of contract and was totally made with only the Defendants' best interests in mind and in total disregard of the contractual rights of Plaintiffs and other Class Members.

173.    Defendants' bad faith material breach(es) of the Plaintiffs' respective Policies, as well as other Class members' policies, has resulted in actual and substantial damages to the Plaintiffs and Extended Business Income Coverage Class members, depriving all of the benefit of their bargain, and represents, in addition to warranting contractual damages, incidental damages, and consequential damages, an independent tort entitling Plaintiffs and other Class Members to punitive damages in an amount which will punish the Defendants for their intentional, grossly negligent, and/or reckless conduct as well as to deter Defendants and others from similar misconduct in the future.

**WHEREFORE**, Plaintiffs, both individually and on behalf of other Class members, seek compensatory damages, contractual damages, incidental damages, consequential damages, and punitive damages, resulting from Defendants' bad faith breach(es) of the Policies and other Class Members' policies, and seek all other relief deemed appropriate by this Court.

## COUNT VII:  DECLARATORY JUDGMENT
### (On behalf of the Civil Authority Coverage Class)

174.     Plaintiffs incorporate by reference and re-allege paragraphs 1 through 103 above, as though fully set forth herein.

175.     Plaintiffs bring this Count both individually and on behalf of the other members of the Civil Authority Coverage Class.  Under 28 U.S.C. §§ 2201 and 2202, this Court has jurisdiction to declare the rights and other legal relations of the parties in dispute.

176.     Plaintiffs' respective Policies, as well as the policies of other Civil Authority Coverage Class members, are insurance contracts under which Defendants were paid premiums in exchange for promises to pay Class members' losses for claims covered by the policies.

177.     In the Plaintiffs' respective Policies and other Class members' policies, Defendants promised to pay for losses of business income sustained and extra expenses incurred when, among other things, a covered cause of loss causes damage to property other than Plaintiffs' properties prohibits access to Plaintiffs' properties.

178.     Plaintiffs and other Class members have suffered losses and incurred expenses as a result of actions of civil authorities that prohibited access to insured premises under the Policies and Class members' policies.

179.     These losses satisfied all requirements to trigger Civil Authority coverage under the Policies and other Class members' policies.

180.    Plaintiffs and the other Class members have complied with all applicable provisions of the policies, including payment of premiums.

181.    Defendants, without justification, deny that the policies provides coverage for these losses.

182.    Plaintiffs seek a Declaratory Judgment that their respective Policies and other Class members' policies provide coverage for the losses that Class members have sustained and extra expenses they have incurred caused by actions of civil authorities.

183.    An actual case or controversy exists regarding Class members' rights and Defendants' obligations under Class members' policies to reimburse Class members for these losses and extra expenses. Accordingly, the Declaratory Judgment sought is justiciable.

**WHEREFORE**, Plaintiffs, both individually and on behalf of other Class members, requests that this Court enter a Declaratory Judgment declaring that their policies provides Civil Authority coverage for the losses and extra expenses incurred by Plaintiffs and the other Class members.

### COUNT VIII:  BREACH OF CONTRACT
**(On behalf of the Civil Authority Coverage Class)**

184.    Plaintiffs incorporate by reference and re-allege paragraphs 1 through 103 above, as though fully set forth herein.

185.    Plaintiffs bring this Count individually and on behalf of the other members of the Civil Authority Coverage Class.

186.    Plaintiffs' respective Policies, as well as the policies of other Civil Authority Coverage Class members, are insurance contracts under which Defendants were paid premiums in exchange for promises to pay Class members' losses and expenses covered by the policies.

187.    In the Policies and other Class members' policies, Defendants promised to pay for losses of business income sustained and extra expenses incurred when a covered cause of loss causes damage to property near the insured premises, the civil authority prohibits access to property near the insured premises, and the civil authority action is taken in response to dangerous physical conditions.

188.    Plaintiffs and other Class members have suffered losses and incurred expenses as a result of actions of civil authorities that prohibited access to insured premises under the Policies and Class members' policies.

189.    These losses satisfied all requirements to trigger Civil Authority coverage under the Policies and other Class members' policies.

190.    Plaintiffs and the other Class members have complied with all applicable provisions of the policies, including payment of premiums.

191.    Defendants have refused performance under the Policies and other Class members' policies by denying coverage for these losses and expenses.  Accordingly, Defendants are in breach of the Policies and other Class members' policies.

192.    As a result of Defendants' breaches of the Policies and other Class members' policies, Plaintiffs and other Class members have suffered actual and substantial damages for which Defendants are liable.

**WHEREFORE**, Plaintiffs seek compensatory damages resulting from Defendants' breaches of the Polices and other Class members' policies, and seek all other relief deemed appropriate by this Court.

### COUNT IX: BAD FAITH BREACH OF CONTRACT AND
### THE DUTY OF GOOD FAITH AND FAIR DEALING
**(On behalf of the Civil Authority Coverage Class)**

193.    Plaintiffs incorporate by reference and re-allege paragraphs 1 through 103 above, as though fully set forth herein.

194.    Plaintiffs bring this Count individually and on behalf of the other members of the Civil Authority Coverage Class.

195.    Plaintiffs' respective Policies, as well as the policies of other Civil Authority Coverage Class members, are insurance contracts under which Defendants were paid premiums in exchange for promises to pay Class members' losses and expenses covered by the policies.

196.    In the Policies and other Class members' policies, Defendants promised to pay for actual loss of business income sustained and necessary extra expenses incurred when a covered cause of loss causes damage to property near the insured premises, the civil authority prohibits access to property near the insured premises, and the civil authority action is taken in response to dangerous physical conditions.

197.    These Covered Causes of Loss were direct, physical and foreseeable causes of loss under the policies and other Class members' policies and they each caused, and/or resulted in, dangerous physical conditions at, and physical injuries to, the Plaintiffs' restaurants, bars or eateries, other Class members' insured premises and property immediately adjacent to each. The subject Covered Causes of Loss pose a serious risk to and endanger(ed) the public's health, safety and property and rendered the Plaintiffs' restaurants, bars or eateries, other Class members' insured premises and areas within one mile of the Plaintiffs' business premises and other Class Members' insured premises, damaged, unusable and/or uninhabitable; thus, prompting the Orders of civil authorities prohibiting access to the same.

198.    These losses and expenses are not excluded from coverage under the policies. The policies are all-risk policies meaning Covered Causes of Loss are determined by exclusions and the subject Covered Causes of Loss were not excluded under the policies.

199.    Furthermore, these Covered Causes of Loss caused damage to property in the area Plaintiffs' various business premises, and the other Class Members' insured premises, resulting in dangerous physical conditions prompting civil authorities, such as, for example, the city of Philadelphia and the Commonwealth of Pennsylvania, to issue Orders prohibiting the public's access to the area immediately surrounding the damaged property, including access to the Plaintiffs' business premises and other Class Members' insured premises.

200.    Accordingly, these losses satisfied all requirements to trigger Civil Authority coverage under the Policies and other Class members' policies.

201.    Plaintiffs and the other Class members have complied with all applicable provisions of the policies, including payment of premiums.

202.    The actions of the Defendants give rise to a cause of action for bad faith breach of contract and the duty of good faith and fair dealing as Plaintiffs and other Class members were covered under Plaintiffs' respective Policies, as well as the policies of other Civil Authority Coverage Class members, and the Defendants have breached the terms of said policies by denying Civil Authority coverage to the Plaintiffs and other Class members. Defendants' actions in breaching the terms of the Plaintiffs' respective Policies and the other Class Members' policies, in bad faith, have proximately caused damages to Plaintiffs and other Class members and the damages were reasonably foreseeable to the Defendants.

203.    It appears that the Defendants' conduct was performed because they placed their own financial interests before the Plaintiffs' and other Class Members' financial interests.

204.    Further, the actions of the Defendants in denying Civil Authority coverage to the Plaintiffs and other Class Members was done so without any legitimate basis or arguable reason and constitute intentional and/or malicious conduct or gross negligence and reckless disregard.

205.    Implied in the Plaintiffs' respective Policies and the other Class Members' policies is a duty of good faith and fair dealing with respect to conduct encompassed by contractual relations. Defendants' conduct as aforesaid breached the duty of good faith and fair dealing which further gives rise to the tort of bad faith for the breach of contract.

206.    Defendants, at all times relevant hereto, owed Plaintiffs and other Class Members a duty to exercise good faith and an obligation to deal fairly with them; however, the denials of Civil Authority coverage by Defendants constituted a bad faith breach of contract and was totally made with only the Defendants' best interests in mind and in total disregard of the contractual rights of Plaintiffs and other Class Members.

207.    Defendants' bad faith material breach(es) of the Plaintiffs' respective Policies, as well as other Class members' policies, has resulted in actual and substantial damages to the Plaintiffs and Civil Authority Coverage Class members, depriving all of the benefit of their bargain, and represents, in addition to warranting contractual damages, incidental damages, and consequential damages, an independent tort entitling Plaintiffs and other Class Members to punitive damages in an amount which will punish the Defendants for their intentional, grossly negligent, and/or reckless conduct as well as to deter Defendants and others from similar misconduct in the future.

**WHEREFORE**, Plaintiffs, both individually and on behalf of other Class members, seek compensatory damages, contractual damages, incidental damages, consequential damages, and

punitive damages, resulting from Defendants' bad faith breach(es) of the Policies and other Class

Members' policies and seek all other relief deemed appropriate by this Court.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully requests that the Court enter judgment in its favor

and against Defendants, as follows:

A.    Entering an order certifying the proposed Classes, designating Plaintiffs as Class representatives for each of the Classes, and appointing Plaintiffs' attorneys as Counsel for the Classes;

B.    Entering declaratory judgments on Counts I, IV, and VII in favor of Plaintiffs and the members of the Business Income Coverage Class, Extended Business Income Coverage Class and Civil Authority Coverage Class as follows:

   i.    That all Business Income and Extra Expense, Civil Authority and Extended Business Income losses and expenses incurred and sustained based on the facts and circumstances set forth above are insured and covered losses and expenses under Plaintiffs' and Class members' policies; and

   ii.   Defendants are obligated to pay for the full amount of the Business Income and Extra Expense, Civil Authority and Extended Business Income losses and expenses sustained and incurred, and to be sustained and incurred, based on the facts and circumstances set forth above are insured and covered losses and expenses under Plaintiffs' and Class members' policies;

C.    Entering judgments on counts II, V, and VIII in favor of Plaintiffs and the members of the Business Income Coverage Class, Extended Business Income Coverage

Class and Civil Authority Coverage Class, and awarding damages for breach of contract in an amount to be determined at trial;

D.      Entering judgments on counts III, VI, IX in favor of the Plaintiffs and the members of the Business Income Coverage Class, Extended Business Income Coverage Class and Civil Authority Coverage Class, and awarding compensatory damages, incidental damages, consequential damages, and punitive damages for the Defendants' bad faith material breach(es) in an amount to be determined at trial;

E.      An order requiring Defendants to pay both pre- and post-judgment interest on any amounts awarded; and

F.      Such other or further relief as may be appropriate.

## DEMAND FOR JURY TRIAL

The undersigned hereby demands a trial by jury as to all issues so triable.

Respectfully submitted,

**GRANT & EISENHOFER P.A.**

    _/s/ Adam J. Gomez_
Adam J. Gomez (PA Bar # 317145)
Tudor I. Farcas (PA Bar # 316541)
M. Elizabeth Graham (*Pro Hac Vice*
Forthcoming)
123 Justison Street, 6th Floor
Wilmington, DE 19801
Tel: 302-622-7000
agomez@gelaw.com
tfarcas@gelaw.com
egraham@gelaw.com

*Attorney for Plaintiffs*

Date:  August 25, 2020